UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MONA C. TRACY and TERAH TRACY, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | CAUSE NO.  3:15-cv-212 |
| PAUL J. MINNE and JEAN M. MINNE, | ) ) ) | |
| Defendants | ) | |

**COMPLAINT FOR DAMAGES**

Plaintiffs, Mona C. Tracy and Terah Tracy (hereinafter sometimes jointly referred to as "Plaintiffs"), by their counsel, and for their Complaint for Damages against the defendants, Paul J. Minne and Jean M. Minne, (hereinafter sometimes jointly referred to as the "Defendants") state as follows:

**Parties**

1. Plaintiffs, Mona C. Tracy and Terah Tracy, are individuals and husband and wife, and that at all times relevant, have been domiciled in and are residents of Vigo County, Indiana.

2. Plaintiff, Mona C. Tracy, is the owner of twenty-six (26) shares of the common capital stock of Phoenix Pallet, Inc., an Indiana corporation (hereinafter sometimes "Phoenix Pallet").

3. Plaintiff, Terah Tracy, is the owner of twenty-four (24) shares of the common capital stock of Phoenix Pallet.

1

4.     The Defendant, Paul J. Minne, at all times relevant hereto, has been domiciled in and is a resident of White Pigeon, St. Joseph County, State of Michigan

5.     From and since December 30, 2010, Paul J. Minne served, and continues to serve as the President of Phoenix Pallet.

6.     That the Defendant, Jean M. Minne, at all times relevant hereto, has been domiciled in and is a resident of White Pigeon, St. Joseph County, State of Michigan.

7.     Jean M. Minne is the owner of fifty (50) shares of the common capital stock of Phoenix Pallet, which she acquired on January 1, 2011.  Jean M. Minne has also served and continues to serve as a member of the Board of Directors of Phoenix Pallet, from and since the approximate date of December 30, 2010.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

9.     Venue is proper for this District pursuant to 28 U.S.C. §1391, in that this is the judicial district in which a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred.

**Creation and Closely Held Status of Phoenix Pallet**

10.     Phoenix Pallet, Inc. was incorporated as an Indiana for-profit domestic corporation on February 26, 2010.  At all times relevant hereto, Phoenix Pallet has maintained its principal place of business located in Elkhart, Indiana.

2

11.     The original principals and shareholders of Phoenix Pallet were the Plaintiffs, Mona C. Tracy and Terah Tracy, and Michael A. Madison and Tammy Madison.  On December 31, 2011, the shares of Michael A. Madison and Tammy Madison were redeemed by  Phoenix Pallet, and Michael A. Madison and Tammy Madison further resigned from all offices held by them in Phoenix Pallet, effective December 31, 2011.

12.     That as a result of the redemption of the shares held by Michael A. Madison and Tammy Madison on December 31, 2011, Phoenix Pallet was left with three stockholders, those being the Plaintiffs and the Defendant, Jean M. Minne.

13.     At all times relevant, Phoenix Pallet was and is a closely-held Indiana corporation having no more then five (5) shareholders, and from December 31, 2011 on, only three (3) shareholders.

14.     At no time did there ever exist a public market for the sale and exchange of the common stock of Phoenix Pallet.

15.     Each and every share certificate issued by Phoenix Pallet bore the following restrictive language:

> The common shares represented by this certificate were acquired for investment only and not for resale.  They have not been registered under the Securities Act of 1933 or any state securities law.  These shares may not be sold, transferred, pledged, or hypothecated within nine (9) months of the date hereof and not thereafter unless first registered under such laws, or unless the Corporation has received an opinion of counsel satisfactory to it that registration under such law is not required.

> The sale, assignment, transfer, pledge or other disposition of the shares of capital stock represented by this certificate are subject to a certain restrictive agreement dated May 7, 2010, a copy of which agreement is on file in the office of the Corporation.

16.     On December 31, 2011, the Plaintiffs, Mona C. Tracy and Terah Tracy, and the Defendants, Jean M. Minne and Paul J. Minne, entered into a "Redemption-Cross Purchase - Buy/Sell Agreement (hereinafter the "Buy/Sell Agreement"), which superceded the restrictive agreement dated May 7, 2010.  The Buy/Sell Agreement provided that no shares of Phoenix Pallet could be transferred or disposed of by a shareholder except in accordance with the terms and conditions of the Buy/Sell Agreement.  The Buy/Sell Agreement further set forth specific provisions for the liquidation of Phoenix Pallet.  A true and accurate copy of the Buy/Sell Agreement is attached hereto and marked as "Exhibit A."

17.     At all times relevant hereto, Phoenix Pallet was a Subchapter S corporation.

### General Allegations

18.     Phoenix Pallet was in the business of manufacturing wooden pallets.  The Plaintiffs possess expertise in this area, as they own a business which sells equipment used in the manufacturing of wooden pallets.

18.     In the Spring of 2010, Plaintiffs sold to Phoenix Pallet the equipment needed by it to commence manufacture its pallets.  The value of this equipment was One Hundred Three Thousand Six Hundred Thirteen Dollars ($103,613.00).  This sale was made by the Plaintiffs to Phoenix Pallet on terms extremely lucrative to Phoenix Pallet.  No down payment was made by Phoenix Pallet for the equipment and Phoenix Pallet was to commence installment payments upon the equipment in June of 2011.  Interest accrued upon said equipment from the point it was put into operation.  At no time has any payment been made upon the equipment by Phoenix Pallet – either principal or interest – and the amount of interest due and owing upon the equipment, as of February, 2015, is Thirty-Four Thousand Sixty-Nine Dollars and Eighty-Three

Cents ($34,069.83).

19.     That in addition to supplying the necessary equipment to Phoenix Pallet, the Plaintiffs also invested monies and other assets in Phoenix Pallet totaling approximately $81,500.00.

20.     That in mid-2010, David M. Rushenberg - - who then served as Phoenix Pallet's accountant - - recommended to the Plaintiffs that they bring the Defendants, Paul J. Minne and Jean M. Minne, into Phoenix Pallet as additional investors.  Mr. Rushenberg also represented that Paul J. Minne, possessed management ability and expertise that would assist in the operations of Phoenix Pallet.

21.     Based upon the recommendations of Mr. Rushenberg, the Plaintiffs and Mike and Tammy Madison voted on December 30, 2010 to allow Jean M. Minne to purchase fifty (50) shares of the capital common stock of Phoenix Pallet.  On that same date, the Plaintiffs and Mike and Tammy Madison, voted to elect Paul J. Minne as Phoenix Pallet's President and further voted to elect Jean M. Minne to Phoenix Pallet's Board of Directors.

22.     Both Defendants, Paul J. Minne and Jean M. Minne, voluntarily accepted their appointments to their respective positions and thus were fiduciaries of Phoenix Pallet.

23.     As an officer and a director, respectively, of Phoenix Pallet, the Defendants, Paul J. Minne and Jean M. Minne, owed duties of care, loyalty, honesty and fidelity to Phoenix Pallet. The Defendants each further owed a duty to refrain from usurping the corporate opportunities of Phoenix Pallet.

24.     As Phoenix Pallet was and is a closely held corporation, the Defendants, Paul J. Minne and Jean M. Minne, both owed fiduciary duties - - including those set forth above - - to

5

the Plaintiffs, as stockholders of Phoenix Pallet.

25.     As a direct result of Defendants, Paul J. Minne and Jean M. Minne's wrongful, willful, and reckless errors, misstatements, misleading statements and acts, omissions, neglect and breaches of duties, Phoenix Pallet has suffered great financial loss, has been liquidated, including the sale of the equipment provided by Plaintiffs, and has been forced to cease operations.

### Defendants' Financial Fraud and Misstatements

26.     In his capacity as President, Paul J. Minne, assumed control of the principal operations of Phoenix Pallet, including control of its financial information, records and reporting. In such capacity, Paul J. Minne, assisted by Jean M. Minne, set about creating two separate sets of financial information, records and books for Phoenix Pallet (hereinafter the "Financial Data"), with one set of Financial Data containing the true and correct information, and the second set of Financial Data containing false information which was used by the Defendants to defraud and mislead the Plaintiffs and third parties.

27.     Based upon the false set of Financial Data provided by the Defendants to the Plaintiffs, and upon which the Plaintiffs relied, the Plaintiffs made additional contributions of monies and assets to Phoenix Pallet and further deferred payments upon the equipment and parts the Plaintiffs had sold to Phoenix Pallet, all to their detriment.

28.     After assuming their respective positions with Phoenix Pallet, the Defendants, individually and/or collectively, claimed that they had made a number of loans to Phoenix Pallet, which loans purportedly exceeded One Half Million Dollars.  Despite repeated requests by the Plaintiffs and their representatives and counsel, the Defendants have never produced any

6

promissory notes to document and authorize such loans.

29.     The loans allegedly made by the Defendants to Phoenix Pallet were never submitted to or approved by the Phoenix Pallet Board of Directors.  In fact, the Plaintiffs specifically directed Plaintiffs to stop making loans to Phoenix Pallet.

30.     The By-Laws of Phoenix Pallet, Inc. provides at Article V, Section 7, the following regarding Execution of Documents - - including promissory notes - - by and on behalf of Phoenix Pallet:

> <u>Section 7 - - Execution of Documents</u>
>
> Unless otherwise provided by the Board of Directors, all contracts, leases, commercial paper and other instruments in writing and legal documents, shall be signed by the President and attested by the Secretary.  All bonds, deeds, and mortgages shall be signed by the President and attested by the Secretary.  All certificates of stock shall be signed by the President and attested by the Secretary.
>
> All checks, drafts, notes and orders for the payment of money shall be signed by those officers or employees of the corporation as the Directors may from time to time designate.

A true and accurate copy of the By-Laws of Phoenix Pallet, Inc. is attached hereto, marked as "Exhibit B," and made a part hereof.

31.     The Defendants' loans to Phoenix Pallet and their promissory notes - - if they ever existed - - were not properly authorized, were not undertaken in compliance with the By-Laws of Phoenix Pallet and Indiana state law, and are void, unenforceable and of no effect.

32.     Based upon the claimed loans of the Defendants to Phoenix Pallet, the Defendants transferred large sums of money from Phoenix Pallet to the Defendants, or for the benefit of the Defendants, with no legal justification or basis, all to the detriment of Phoenix Pallet and the Plaintiffs.

33.    In order to secure the claimed loans of the Defendants to Phoenix Pallet, the Defendant, Paul J. Minne, had prepared a Security Agreement in which the Defendants purportedly took a security interest in all of the assets of Phoenix Pallet, including the equipment which the Plaintiffs had sold to Phoenix Pallet, and for which they have never received payment thereon.  The Security Agreement was purportedly signed on behalf of Phoenix Pallet by Mike Madison, as Vice President of Phoenix Pallet, and was dated December 31, 2011.

34.    That pursuant to the By-Laws of Phoenix Pallet - - and specifically Article V, Section 1 -- the officers of Phoenix Pallet consist of a President, a Secretary and a Treasurer.  The By-Laws of Phoenix Pallet do not authorize an office of Vice President.

35.    On the date that Mike Madison purportedly signed the Security Agreement, he had already tendered his resignation as officer and director of Phoenix Pallet, effective December 31, 2011, as shown by the Resignation attached hereto, marked as "Exhibit C," and made a part hereof.

36.    The Defendants' Security Agreement upon which they rely to secure their claimed loans and indebtedness was and is invalid, void, and of no force or effect.

### Defendants' Mismanagement and Misuse of Phoenix Pallet's Assets and Resources

37.    The Defendants, individually and/or collectively, willfully and recklessly caused Phoenix Pallet to accumulate and incur debts that were beyond Phoenix Pallet's ability to pay as such debts matured.  Further, the Defendants undertook such actions without notifying the Plaintiffs or obtaining the consent and/or approval of such actions by Phoenix Pallet's Board of Directors or Stockholders.

8

38.     The Defendants, individually and/or collectively, willfully and/or recklessly failed to establish or require that proper financial policies, procedures and controls were in place and adhered to by Phoenix Pallet and its employees.

39.     Because of the willful and/or reckless conduct of the Defendants, as specified above, Phoenix Pallet's financial records and books were incorrect, inaccurate, incomplete, misleading and not maintained in accordance with generally-accepted accounting principals.  The Defendants further willfully and/or recklessly caused (or failed to prevent) the provision by Phoenix Pallet of incorrect, inaccurate, incomplete, misleading, inflated and/or false financial information to Phoenix Pallet's creditors and the Plaintiffs.

40.     The Defendants, individually and/or collectively, willfully and recklessly failed to supervise, manage and monitor the employment practices of Phoenix Pallet, including procedures for payment of benefits and reimbursement of claimed expenses to Phoenix Pallet employees, with the result that certain of Phoenix Pallet's employees were often paid or reimbursed for expenses which had no relation to their duties with Phoenix Pallet, or for which Phoenix Pallet had, itself, paid for.

41.     The Defendants misused and misappropriated the assets, resources and workforce of Phoenix Pallet for Defendants' own personal uses and benefits and/or the uses and benefits for other companies and businesses owned and/or controlled by the Defendants, all to the detriment of Phoenix Pallet.  This includes, but is not limited to, the use by the Defendants of property and premises owned and/or leased by Phoenix Pallet, for the benefit of the Defendants' other businesses.

**Defendants' Violation of Buy-Sell Agreement and**
**Improper Liquidation and Closure of Phoenx Pallet**

42.     In mid and late December 2014, the Defendants, individually and/or collectively, attempted to coerce the Plaintiffs into selling their Phoenix Pallet stock to a third party, in violation of the parties' Buy-Sell Agreement and the Phoenix Pallet By-Laws.

43.     When the Defendants failed in their efforts to coerce the Plaintiffs to sell their stock to the third party, the Defendants undertook a course of action to convert and transfer as much of Phoenix Pallet's assets as possible to Defendants under the guise of liquidating and closing Phoenix Pallet.

44.     On or about January 16, 2015, the Defendant, Paul J. Minne, terminated Phoenix Pallet's most successful salesperson, and arranged for that salesperson to become employed by a direct competitor of Phoenix Pallet (who had previously attempted to purchase Phoenix Pallet). In orchestrating the termination of this salesperson and his re-employment by Phoenix Pallet's competitor, the Defendants took no action to protect or secure Phoenix Pallet's trade secrets and confidential information, including its customer list, and allowed the salesperson to convey Phoenix Pallet's trade secrets, confidential information and customer lists and information to his new employer, all to the detriment of Phoenix Pallet and the Plaintiffs.

45.     Also in mid-January 2015, the Defendants unilaterally determined to liquidate and close Phoenix Pallet, without securing the consent or authorization of Phoenix Pallet's Board of Directors or the Plaintiffs.  The liquidation and closure of Phoenix Pallet by the Defendants was in violation of the parties' Buy-Sell Agreement, the By-Laws of Phoenix Pallet, and Indiana state law.

46.     On January 19, 2015, the Defendant, Paul J. Minne, had served upon Phoenix

Pallet a Notice calling due all of Defendants' claimed loans, including interest, as of January 24,

2015.  This Notice, drafted and mailed by Defendants' counsel, James V. Woodsmall, stated as

follows:

January 19, 2015

Phoenix Pallet, Inc.
P.O. Box 4317
Elkhart, IN 46517

RE:     Outstanding Notes

Dear Sir or Madam:

    I represent Paul Minne who is calling all of his Notes to your company.
The entire amount of principal and interest is due no later than January 24, 2015.
If payment in full is not received, my client will exercise his rights as a secured
creditor.  We will liquidate the assets of the Company, first in private sales, on or
after January 30, 2015, and then auction the balance that is left.  First proceeds
will go to First Source Bank as secured creditor.

Sincerely,

James V. Woodsmall

47.     Despite repeated requests by the Plaintiffs and their representatives, the

Defendants failed and refused to produce copies of any of the Promissory Notes referenced in the

Defendants' Notice of January 19, 2015.  Further, the Defendants failed and refused to produce

the Security Agreement, upon which the Defendants base their claimed rights as a secured

creditor to the assets of Phoenix Pallet, other than to produce the final signature page, which

revealed that it had not been properly executed and was not binding upon Phoenix Pallet.

48.     In late January, 2015, the Defendants closed Phoenix Pallet as a going concern

11

and fired/laid off its remaining employees.  The assets of Phoenix Pallet (consisting primarily of the equipment supplied to it by the Plaintiffs) were sold, with the monies first going to pay a bank loan, and the remaining monies being taken by the Defendants, without right or justification.

49.     In liquidating and closing Phoenix Pallet, the defendants, and each of them, failed to provide for - - or set up a contingency - - for the payment of Phoenix Pallet's taxes, debts, including obligations taking priority over any alleged secured claim of the Defendants, all in violation of Indiana state law, the Buy-Sell Agreement of the parties and Phoenix Pallet's By-Laws.

50.     Upon being informed of the liquidation and closure of Phoenix Pallet, the Plaintiffs sought to obtain and secure the financial records, documents, and books of Phoenix, including such financial information stored in paper form at Phoenix Pallet's physical premises, and also secured upon the computers of Phoenix Pallet.  Upon learning of the Plaintiffs' attempt to obtain such information and documentation, the Defendants called the police and prevented Plaintiffs from obtaining any such information or documentation, other than a download of certain computer information.

51.     The paper financial records, documents and books of Phoenix Pallet were last seen by the Plaintiffs being stored in a hallway of the Phoenix Pallet facility, which was being taken over by another competitor.  The Defendants made no attempt and took no action to secure such records, despite the fact that Defendants prevented the Plaintiffs from obtaining and securing such records and documentation.

52.     That at all relevant times, Phoenix Pallet was a closely held Indiana corporation,

and that Plaintiffs are therefore entitled to bring the claims set out below as direct actions, under Indiana law.

## Count I - Breach of Fiduciary Duties

53.     The Plaintiffs repeat and reallege each of the foregoing paragraphs, as if fully set forth within this Count I.

54.     As an officer and director of Phoenix Pallet, respectively, Defendants, individually and collectively, owed fiduciary duties to Phoenix Pallet.  Such fiduciaries duties included, but were not limited to, duties of care, loyalty, honesty and fidelity to Phoenix Pallet.

55.     The Defendants, individually and collectively, further owed duties to refrain from usurping the corporate opportunities of Phoenix Pallet.

56.     The Defendants, individually and collectively, further owed fiduciary duties to Phoenix Pallet and the Plaintiffs by virtue of the fact that Phoenix Pallet was a closely held corporation.

57.     The Defendant, Jean M. Minne, further was required to adhere to a minimum standard of conduct as set forth in Indiana Code 23-1-35-1.

58.     Defendants, individually and collectively, breached their fiduciary duties to Phoenix Pallet and the Plaintiffs.

59.     Some or all of the Defendants' breaches constituted wilful and/or reckless misconduct.

60.     As a direct and foreseeable result of Defendants' individual and collective breaches of their fiduciary duties, Phoenix Pallet was financially ruined, rendered unable to pay its debts as such debts matured, and suffered significant financial damage.

13

61.     Some or all of the Defendants' individual and collective actions in breaching their fiduciary duties were harmful, willful, wanton and undertaken with a callous disregard for the best interests of Phoenix Pallet.  Punitive damages in this claim against Defendants are appropriate to deter such conduct in the future and to serve the public good.

WHEREFORE, the Plaintiffs, Mona C. Tracy and Terah Tracy, request that the Court enter judgment in their favor and against the Defendants for damages in an amount as Plaintiffs prove at trial, together with punitive damages, pre-judgment and post-judgment interest at the highest legal rate, the costs of this action, and for all other relief just and proper in the premises.

## Count II - Conversion

62.     The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth in this Count II.

63.     Pursuant to Indiana law, a person who misappropriates assets belonging to another for that person's own use and benefit, in exclusion and defiance of the owner's rights and under an inconsistent or invalid claim of title, is liable for the tort of conversion.

64.     The Defendants, and each of them, converted Phoenix Pallet's assets.

65.     As a direct and proximate result of the conversion of the Defendants, Phoenix Pallet and Plaintiffs have sustained injuries and damages.

66.     The Defendants actions in converting the assets of Phoenix Pallet, were harmful, willful, wanton and undertaken with a callous disregard for the best interests of Phoenix Pallet and the Plaintiffs.  Punitive damages in this claim against the Defendants are appropriate to deter such conduct in the future and to serve the public good.

WHEREFORE, the Plaintiffs, Mona C. Tracy and Terah Tracy, request that the Court

enter judgment in their favor and against the Defendants for damages in an amount as Plaintiffs

prove at trial, together with punitive damages, pre-judgment and post-judgment interest at the

highest legal rate, the costs of this action, and for all other relief just and proper in the premises.

### Count III - Criminal Conversion

67.     The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set

forth in this Count III.

68.     Pursuant to Indiana Code 35-43-4-3, a person who knowingly exerts unauthorized

control over property of another person commits criminal conversion.

69.     The Defendants knowingly exerted unauthorized control over Phoenix Pallet's

property and assets.

70.     As a direct and proximate consequence of the conversion committed by the

Defendants, Phoenix Pallet and the Plaintiffs have sustained injuries and damages.

71.     Pursuant to Indiana Code 34-24-3-1, Phoenix Pallet and Plaintiffs are entitled to

recover from the Defendants three times their actual damages, the costs of this action, reasonable

attorneys' fees, travel expenses, direct and indirect expenses incurred by Phoenix Pallet and

Plaintiffs related to attending any court proceedings, and reasonable costs of collection.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment against

the Defendants for damages in such amount as Plaintiffs prove at trial, plus treble damages, the

costs of this action, reasonable attorneys' fees, travel expenses, direct and indirect expenses

incurred by Plaintiffs related to attending any court proceedings, reasonable costs of collection,

pre-judgment and post-judgment interest at the highest legal rate, and all other relief just and

proper in the premises.

15

**Count IV - Deception**

72.     The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth in this Count IV.

73.     Pursuant to Indiana Code 35-43-5-3, a person commits the crime of deception if the person knowingly or intentionally makes a false or misleading written statement with intent to obtain property.

74.     Defendants individually and/or collectively, knowingly or intentionally made false or misleading written statements with intent to obtain the property of both Phoenix Pallet and the Plaintiffs.

75.     Pursuant to Indiana Code 34-24-3-1, Plaintiffs are entitled to recover from Defendants three times their actual damages, the costs of this action, reasonable attorneys' fees, travel expenses, direct and indirect expenses incurred by Plaintiffs related to attending any court proceedings, and reasonable court costs.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment against the Defendants for damages in such amount as Plaintiffs prove at trial, plus treble damages, the costs of this action, reasonable attorneys' fees, travel expenses, direct and indirect expenses incurred by Plaintiffs related to attending any court proceedings, reasonable costs of collection, pre-judgment and post-judgment interest at the highest legal rate, and all other relief just and proper in the premises.

**Count V - Fraud/Constructive Fraud**

76.     The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth in this Count V.

16

77.    The Defendants, individually and collectively, made material misrepresentations, or assisted or authorized the making of material misrepresentations to the Plaintiffs regarding the financial condition, status and affairs of Phoenix Pallet, as specified in the preceding paragraphs of this Complaint.

78.    The material misrepresentations made by the Defendants were false and/or violated the duties owed by the Defendants to Plaintiffs.  Plaintiffs relied upon the misrepresentations resulting in damages to Plaintiffs and the gaining of an advantage by the Defendants.

79.    The misrepresentations specified herein further constitute constructive fraud.

80.    The Defendants' misrepresentations specified herein were harmful, willful, wanton and undertaken with a callous disregard for the interests of Phoenix Pallet and the Plaintiffs.  Punitive damages in this action against the Defendants are appropriate to deter such conduct in the future and to serve the public good.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment against the Defendants for damages in such amount as the Plaintiffs prove at trial, together with punitive damages, pre-judgment and post-judgment interest at the highest legal rate, the costs of this action, and all other relief just and proper in the premises.

### Count VI - Willful, Reckless and Gross Negligence in the Management, Administration and Supervision of Phoenix Pallet

81.    The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth within this Count VI.

82.    The Defendant, Paul J. Minne, in his capacity as President of Phoenix Pallet, was

willfully, recklessly and/or grossly negligent in his management, oversight, supervision and control of Phoenix Pallet.

83.     The willful, reckless and/or gross negligence on the part of the Defendant, Paul J. Minne, proximately caused the Plaintiffs' damages.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment against the Defendant, Paul J. Minne, for damages in such amount as the Plaintiffs prove at trial, pre-judgment and post-judgment interest at the highest legal rate, the costs of this action, and all other relief just and proper in the premises.

## Count VII - Breach of Contract

84.     The Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth within this Count VII.

85.     That the actions of the Defendants, individually and collectively, as specified above, constituted a breach of the Buy-Sell Agreement between the Defendants and the Plaintiffs, which breach has resulted in damages to the Plaintiffs.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment against the Defendants for damages in such amount as the Plaintiffs prove at trial, pre-judgment and post-judgment interest at the highest legal rate, the costs of this action, and all other relief just and proper in the premises.

HUNT, HASSLER, LORENZ & KONDRAS, LLP

By _____/s/ Mark D. Hassler_____
            Mark D. Hassler
            Attorney No. 8102-84

100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691