UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MONA C. TRACY and TERAH TRACY, ) | |
| ) | |
| Plaintiffs/ ) | |
| Counter-Defendants ) | |
| ) | |
| vs. ) | CAUSE NO. 3:15-cv-212 RLM |
| ) | |
| PAUL J. MINNE and JEAN M. MINNE, ) | |
| ) | |
| Defendants/ ) | |
| Counter-Plaintiffs ) | |

OPINION AND ORDER

Mona and Terah Tracy sued Paul and Jean Minne alleging breach of fiduciary duties (Count 1); conversion (Count 2); criminal conversion (Count 3); deception (Count 4); fraud and constructive fraud (Count 5); willful, reckless and gross negligence in the management, administration and supervision of Phoenix Pallet (Count 6); and breach of contract (Count 7). The Minnes filed five counterclaims against the Tracys: fraud (Count 1), constructive fraud (Count 2), breach of fiduciary duty (Count 3), breach of contract (Count 4), and deception (Count 5). The Tracys moved for partial summary judgment on the Minnes' fraud and constructive fraud counterclaims [Doc No. 40]; the Minnes moved for summary judgment on all of the Tracys' claims [Doc. No. 42]. For the following reasons, the court denies Tracys' partial summary judgment motion and grants in part and denies in part the Minnes' summary judgment motion.

I. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-92 (7th Cir. 2011). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011); *see also* Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009) ("[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies").

"[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. The court recognizes that this matter is scheduled for a bench trial

and, should it proceed to a trial, the court will be the trier of fact and required to weigh the evidence and resolve factual disputes. The court's determination of the issues pertaining to these motions shouldn't be taken as an indication of how the court will rule at trial. A ruling at trial comes after hearing additional evidence and gaining a better sense of the case by seeing and hearing witnesses.

## II. Background

Phoenix Pallet was incorporated as a close corporation in 2010 to manufacture wood pallets. Mr. and Ms. Tracy, along with Michael and Tammy Madison, were the corporation's original shareholders. In addition to their initial cash investment, the Tracys provided the corporation with the equipment needed to operate the business (through a second business they owned). After less than a year of operation, Phoenix Pallet was struggling financially and sought investors to inject capital into the company. The corporation's outside accountant, David Rushenberg, suggested the shareholders contact one of his clients, Paul Minne. Mr. Minne made an initial investment and, at a December 2010 meeting with the Tracys, the Madisons, and Mr. Rushenberg, the shareholders elected Mr. Minne as the corporation's president and issued Jean Minne a 33 percent stake in the corporation. In 2012, Phoenix Pallet redeemed the Madisons' shares after they entered bankruptcy proceedings, at which point Ms. Minne held a 50 percent share of the corporation and the Tracys held the other 50 percent. Over the next four years, the Minnes made substantial investments and loans to Phoenix Pallet and the Minnes and the Tracys jointly

3

paid $50,000 toward a Phoenix Pallet bank loan. Sales increased significantly, but the corporation remained unprofitable. In 2015, 1st Source Bank called a note it issued and Phoenix Pallet was liquidated.

The Tracys filed this suit against the Minnes, who counterclaimed. The court has jurisdiction under 28 U.S.C. § 1332(a): the Tracys are citizens of Indiana, the Minnes are citizens of the state of Michigan, and the amount in controversy exceeds $75,000. The parties agree that Indiana law governs the case.

III. Discussion

*A. The Tracys' Partial Summary Judgment Motion*

The Tracys moved for summary judgment on two of the Minnes' five counterclaims: the fraud and the constructive fraud claims.

To prove their fraud claim, the Minnes must demonstrate: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 335 (Ind. 2013) (quoting Lawyers Title Ins. Corp. v. Pokraka, 595 N.E.2d 244, 249 (Ind. 1992)). "[F]raud is not limited only to affirmative representations; the failure to disclose all material facts can also constitute actionable fraud." Id. (quoting Lawson v. Hale, 902 N.E.2d 267, 275 (Ind. Ct. App. 2009)).

4

To prove their constructive fraud claim, the Minnes must demonstrate: "(1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party." Harmon v. Fisher, 56 N.E.3d 95, 99 (Ind. Ct. App. 2016) (quoting American Heritage Banco, Inc. v. Cranston, 928 N.E.2d 239, 246 (Ind.Ct.App.2010)).

The Minnes' fraud and constructive fraud claims are based on the allegation that the Tracys represented to the Minnes that the equipment they provided to Phoenix Pallet was a capital investment, not a loan, which induced Ms. Minne to purchase shares in the corporation and the Minnes to further invest in the corporation. The Tracys argue that the Minnes don't have evidence that they made a material misrepresentation and point to Mr. Minne's testimony that "[Mr.] Madison and the – the accountant, [and] the accounting paperwork" led him to believe that the transaction was a capital contribution, rather than a statement from the Tracys. [*See* Doc. No. 41-2 at 8].

Other portions of Mr. Minne's testimony, when read in the light most favorable to the Minnes, would allow a reasonable trier of fact to find that the Tracys did lead him to believe they provided the equipment as a capital contribution. When Mr. Minne was asked "you said someone had told you that the Tracys had put in the equipment and would be paid back when there was a

5

profit," he responded, "[t]hey told me." [Doc. No. 41-2 at 7]. And Ms. Minne testified that the Tracys said they provided the equipment as a capital contribution at the meeting when the Ms. Minne decided to become a Phoenix Pallet shareholder. [*See* Doc. Nos. 41-2 at 7, 47-2 at 11]. Such a factual dispute can't be resolved on summary judgment.

The Tracys contend that Mr. Minne had no right to rely on any alleged misrepresentation by the Tracys, arguing that he is a relatively sophisticated business owner, operator, and investor who based his investment decision on an end-of-month balance sheet and income statement that listed a note to shareholder and a conversation with a 1st Source Bank representative, rather than on any information provided by the Tracys. In fact, Mr. Minne testified that he due diligence prior to investing in Phoenix Pallet "wasn't very good." [Doc. No. 41-2 at 7]. The Tracys note that Mr. Minne had already invested $90,000 before the Tracys allegedly misrepresented that the equipment that they provided to Phoenix Pallet was a capital investment, not a loan.

The Tracys are right that Mr. Minne didn't rely on any alleged misrepresentation before making his initial investment of $90,000, the Minnes cite evidence showing that they made substantial investments and loans to Phoenix Pallet after the Tracys' alleged misrepresentation and argue that those transactions were made in reliance on the Tracys' alleged misrepresentation. The Minnes say they invested $173,000 between the date of the alleged misrepresentation and the end of 2011, loaned $400,000 to Phoenix Pallet by the end of 2014, and personally guaranteed the corporation's debt to 1st Source

6

Bank. The Minnes acknowledge that the balance sheet they reviewed contained an entry for notes payable to shareholder in the amount of over $101,000, but contend that a corporate balance sheet also showed a paid-in-capital entry for $95,615, which Mr. Minne testified he understood to represent the Tracys' equipment contribution. This review of the evidence demonstrates that there is a genuine dispute of material facts regarding the Minnes' reliance on Tracys' alleged misrepresentation that can't be resolved on summary judgment.

The Tracys also argue that the court should grant summary judgment on their constructive fraud claim because the Minnes can't establish that the Tracys gained an advantage at the Minnes' expense. *See* Harmon v. Fisher, 56 N.E.3d 95, 99 (Ind. Ct. App. 2016). In response, the Minnes cite evidence of Phoenix Pallet's precarious financial position before the Minnes' investments—the corporation ended each of the three months leading up to the December 2010 meeting at which Ms. Minnes became a shareholder with at least $140,000 in net negative assets—and argue that the Minnes' substantial investments in Phoenix Pallet saved the Tracys from personal liability when 1st Source Bank called its note. This is enough evidence to demonstrate a triable issue on this element of the Minnes' constructive fraud claim.

For those reasons, the court denies the Tracys' motion for partial summary judgment on the Minnes' fraud and constructive fraud counterclaims.

*B. The Minnes' Summary Judgment Motion*

The Minnes seek summary judgment on all of the Tracys' claims. At the hearing on these motions, the Tracys conceded that there was no breach of the buy/sell agreement and, therefore, no breach of contract, so the court will grant the Minnes' motion as to the breach of contract claim and address the motion with respect to the other six counts.

1.  <u>The Claims Against Jean Minne</u>

The Minnes argue that Ms. Minne is entitled to summary judgment on all claims because the Tracys didn't produce evidence that she played any part in running Phoenix Pallet or engaged in any alleged wrongdoing. The Minnes point to Mr. Madison's testimony that, beyond being a shareholder and a director, Ms. Minne had no active role in the corporation. They also cite Ms. Minne's testimony that she had no involvement with the corporation and was only a shareholder because the other shareholders wanted Phoenix Pallet to be a woman-owned business. The Minnes assert that Mr. Minne is the Tracys' real target and simply being Mr. Minne's wife doesn't form a basis for legal liability.

The Minnes haven't cited any authority suggesting that liability on the Tracys' claims can only attach if Ms. Minne was an active participant in Phoenix Pallet's operations beyond her role as a director and a shareholder. Evidence in the record would allow a finding that while Ms. Minne may not have been involved in Phoenix Pallet's day-to-day operations, she was an active participant in shareholders and directors' meetings, offering "her two cents worth on what

8

[the shareholders and directors] should do." [Doc. No. 48-5 at 22]. Some of the Tracys' claims are based on Mr. Minne executing a security agreement with Phoenix Pallet and Ms. Minne testified at her deposition that she and Mr. Minne discussed obtaining the security agreement "to protect [themselves] for the money [they] were putting into the company." [Doc. No. 48-3 at 5].

The Tracys have presented sufficient evidence to demonstrate a genuine issue of fact regarding Ms. Minne's role in any alleged wrongdoing related to her position as a director and shareholder of Phoenix Pallet, so the Minnes' request for summary judgment on all claims against Ms. Minne must be denied.

### 2. Breach of Fiduciary Duty Claims

The Minnes move for summary judgment on the Tracys' breach of fiduciary duty claims against Mr. and Ms. Minne, arguing that the Tracys haven't presented sufficient evidence to support these claims.

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." Good v. Indiana Teachers Ret. Fund, 31 N.E.3d 978, 983 (Ind. Ct. App. 2015) (quoting York v. Fredrick, 947 N.E.2d 969, 978 (Ind.Ct.App.2011).

Mr. Minne was an officer, not a director, of Phoenix Pallet but the "standard imposed by a fiduciary duty is the same whether it arises from the capacity of a director, officer, or shareholder in a close corporation." G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 240 (Ind. 2001). The Minnes argue that

the Tracys can't show that Mr. Minne breached any fiduciary duty, but the Tracys' articulate two viable arguments that Mr. Minne breached his fiduciary duties: (1) by executing, not disclaiming, or claiming security interests in corporate assets based on a purported promissory note and security agreement with Phoenix Pallet, and (2) by maintaining a false set of financial records for Phoenix Pallet.

Mr. Madison executed a promissory note payable to Mr. Minne in the amount of $200,000 and a security agreement on behalf of Phoenix Pallet. The Tracys contend that the note and security agreement were invalid because they were signed by on behalf of Phoenix Pallet by Mr. Madison, the corporation's Vice-President while Phoenix Pallet's bylaws require that "[u]nless otherwise provided by the Board of Directors, all . . . commercial paper and other instruments . . . shall be signed by the President and attested by the Secretary." [Doc. No. 48-2 at 42]. In fact, the bylaws don't even provide for the office of Vice-President.

According to the Tracys, the instruments are invalid because they weren't executed as provided by the bylaws and by not disclaiming this invalid debt, Mr. Minne was acting in his own interest rather than in the interest of Phoenix Pallet. Mr. Minne argues that any mistake in having the wrong officer sign the agreement was a technicality and doesn't indicate bad faith.

Indiana law requires that courts closely scrutinize an interested transaction between an officer and the corporation. Purcell v. S. Hills Investments, LLC, 847 N.E.2d 991, 1000 (Ind. Ct. App. 2006) (quoting In re

Mader's Store for Men, Inc., 77 Wis. 2d 578, 602, 254 N.W.2d 171, 185 (1977)). The corporate officer must persuade the court that the transaction was in the furtherance of the corporation's interest. Id. "Authority to execute negotiable instruments is strictly construed . . . [and a corporate officer] by virtue of his office alone cannot exercise such power unless the board of directors expressly delegates such power or clothes him with apparent authority by a continuity of acts and practices." Vincennes Sav. & Loan Ass'n of Vincennes v. Robinson, 23 N.E.2d 431, 435 (1939).

There is no evidence that Phoenix Pallet's board of directors expressly delegated the power to execute a promissory note or security agreement to Mr. Madison and the bylaws vest that authority in the President alone. Mr. Minne asserts that the promissory note and security agreement were valid despite not conforming to the requirements of the bylaws, but cites no authority supporting this position.

The Tracys also presented evidence suggesting Mr. Minne hadn't actually loaned Phoenix Pallet the $200,000 provided for in the note and security agreement when they were executed. Mr. Minne cites to Phoenix Pallet's financial records and argues that he had loaned $263,000 to the corporation when the note was executed, but he testified that he had loaned Phoenix Pallet less than $200,000 when the instruments were executed, and testified that the note "was like a line of credit. If you needed [$]5, 10,000, I could loan it and . . . I'd be secured." [Doc. No. 48-2 at 15]. The Minnes didn't present evidence that the note or agreement were approved by or disclosed to the board of directors.

11

Viewing the evidence in the light most favorable to the Tracys, Lauderdale v. Illinois Dep't of Human Servs., 876 F.3d 904, 907 (7th Cir. 2017), a reasonable trier of fact could find that Mr. Minne was "distracted from the performance of his official duties by [his] personal interests" in the note and security agreement. G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 240 (Ind. 2001). Because the Tracys also were harmed—their capital contribution was lost when the company dissolved—a reasonable trier of fact could also conclude that he violated his fiduciary duty.[1]

The Tracys next argue that Mr. Minne breached his fiduciary duty because Phoenix Pallet maintained two sets of books. The Tracys point to their testimony and Ms. Madison's testimony that Phoenix Pallet's accountant, Mr. Rushenberg, stated at a shareholder meeting that the company had two sets of books. This evidence is inadmissible hearsay, which the court can't consider in ruling on the summary judgment motion. Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009). The Tracys also cite evidence that Mr. Minne heard Mr. Rushenberg's statement and didn't deny it, making it admissible as an adoptive admission

---

[1] The Tracys also contend that (1) Mr. Minne should have disclaimed the purported note and security agreement because Mr. Madison resigned, effective December 31, 2011, the day the documents were executed and so couldn't have signed the documents on behalf of the corporation; and (2) Mr. Madison might not have signed the documents; he testified he didn't recall seeing the documents and the signatures don't match. These aren't grounds for denying summary judgment. The evidence demonstrates that Mr. Madison resigned in the spring of 2012 and his resignation was backdated to December 31, 2011 on the advice of Phoenix Pallet's accountant and Mr. Madison's bankruptcy attorney and the Tracys haven't cited any authority to support their contention that the documents would be invalidated by a later resignation backdated to the day the documents were executed. As to the validity of the signatures, Mr. Madison testified in his deposition that he didn't recall seeing the documents, but he didn't deny that the signatures were his.

under Federal Rule of Evidence 801(d)(2)(B). *See* United States v. Ward, 377 F.3d 671, 675 (7th Cir. 2004) (holding that "a statement may be adopted as long as the statement was made in the [party opponent's] presence, the [party opponent] understood the statement, and the [party opponent] has the opportunity to deny the statement but did not do so"). Mr. Rushenberg denied making the statement and Mr. Minne denied that Phoenix Pallet maintained two sets of books.

Maintaining two sets of books, with one set hidden from the corporation's directors and shareholders, would violate Mr. Minne's fiduciary duty to "deal fairly, honestly, and openly with his corporation and . . . stockholders." G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 240 (Ind. 2001) (quoting Hartung v. Architects Hartung/Odle/Burke, Inc., 301 N.E.2d 240, 243 (1973)). The Tracys have presented sufficient evidence to create factual dispute that the court can't resolve on summary judgment. Haugerud v. Amery Sch. Dist., 259 F.3d 678, 689 (7th Cir. 2001).

Mr. Minne argues that he is shielded from a breach of fiduciary duty claim by the business judgement rule, which has been codified in Indiana and specifically provides that the presumption that he was acting in good faith can't be overcome by allegations of negligence; the Tracys must show recklessness or willful misconduct. Ind. Code § 23–1–35–1(e); G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 238 (Ind. 2001). Based on Mr. Minne's testimony that he knew he hadn't loaned Phoenix Pallet $200,000 at the time he executed the promissory note and security agreement, a reasonable trier of fact could find that his actions were willful. A reasonable trier of fact could also find that allowing a corporation

to maintain two sets of financial records rises above the level of simple negligence.

The Tracys contend that Ms. Minne breached her fiduciary duty by actively participating with Mr. Minne in the effort to secure a promissory note and security agreement without disclosing it to the other directors and shareholders. The Minnes assert that summary judgment should be granted on this claim because the Tracys haven't shown that Ms. Minne had anything to do with the note or security agreement being executed and that her position as Mr. Minne's wife doesn't create an actionable claim.

Ms. Minne didn't sign the security agreement, but there is evidence that she was involved in planning the execution of the agreement; she testified that she and Mr. Minne "discussed getting some sort of agreement, you know, to protect us." [Doc. No. 48-3 at 5]. In addition, this was a conflict of interest transaction due to her position as Mr. Minne's spouse. A conflict of interest transaction "is a transaction with the corporation in which a director of the corporation has a direct or indirect interest." Ind. Code § 23-1-35-2. Such a transaction can be cured by disclosing the material facts of the transaction, the transaction was approved by the board, or the transaction was fair to the corporation. Id.

As already noted, the Minnes cite no evidence that the transaction was disclosed to or approved by the board. While there is ample evidence in the record that Phoenix Pallet faced financial difficulties and needed the cash infusion the Minnes provided, viewing the evidence in the light most favorable to the Tracys,

14

there is a genuine dispute as to whether the transaction was fair to Phoenix Pallet. As previously noted, a trier of fact could find that the Minnes hadn't actually loaned $200,000 to the corporation at the time the promissory note and security agreement were executed. Accordingly, a reasonable trier of fact could find that Ms. Minne breached her fiduciary duty and that she isn't entitled to the business judgment rule's presumption of good faith. *See* G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 239 (Ind. 2001) (a shareholder breaches her fiduciary duty when she enters "into an unfair transaction to the personal advantage of the . . . shareholder").

The evidence reviewed and analysis of the breach of fiduciary duty claim against Mr. Minne also applies to the claim against him for willful, reckless and grossly negligent management, so, the summary judgment motion with respect to that claim must also be denied.

### 3. Conversion Claims

To prevail on a claim of civil conversion, the Tracys must establish, by a preponderance of the evidence, that the Minnes knowingly or intentionally exerted unauthorized control over property of another. Abernathy v. Bertram, 967 N.E.2d 510, 514 (Ind. Ct. App. 2012); *see also* Ind. Code § 34-24-3-1. A claim of criminal conversion under Indiana law requires that the Tracys prove that the Minnes knowingly or intentionally exerted unauthorized control over property of another, Ind. Code § 35-43-4-3(a), and that the Minnes "[were] aware that there was a high probability that [their] control over the property was

unauthorized." Dean V. Kruse Foundation, Inc. v. Gates, 932 N.E.2d 763, 769 (Ind. Ct. App. 2010).

As described when analyzing the breach of fiduciary duty claims, the promissory note and the security agreement weren't executed by an officer authorized by the bylaws to do so. The Tracys argue that if the court finds that the note and security agreement weren't validly executed and that the Tracys had a superior right to collection of the proceeds of Phoenix Pallet's liquidation, then the court should deny summary judgment on the conversion claims.

The Minnes loaned considerable sums to Phoenix Pallet. Even if the note and security agreement weren't valid, the Minnes would still be unsecured creditors and have a valid claim to the proceeds of Phoenix Pallet's liquidation. "Indiana permits corporations, while prosecuting their corporate business even with liabilities greater than assets, to prefer certain creditors—including officers and directors—to others, as would an individual." Geiger & Peters, Inc. v. Berghoff, 854 N.E.2d 842, 851 (Ind. Ct. App. 2006). The Tracys haven't shown why they should have been prioritized over the Minnes during Phoenix Pallet's liquidation, so they can't show that the Minnes exerted unauthorized control over their property and the court must grant summary judgment on the Tracys' conversion claims against both of the Minnes.

4. Deception, Fraud, and Constructive Fraud Claims

A person commits deception under Indiana law when he or she "knowingly or intentionally makes a false or misleading written statement with intent to

16

obtain property." Ind. Code § 35-43-5-3(a)(2). To succeed on that claim, the Tracys must prove, by a preponderance of evidence, that the Minnes knowingly or intentionally made a false or misleading written statement to obtain money from Phoenix Pallet or the Tracys, or the Minnes misapplied the money they received from Phoenix Pallet in a manner they knew to be unlawful. American Heritage Banco, Inc. v. McNaughton, 879 N.E.2d 1110, 1118 (Ind. Ct. App. 2008).

As discussed, the Tracys have produced sufficient evidence, viewed in a light most favorable to them, that Mr. Minne intentionally executed a promissory note and security agreement that wasn't executed in accordance with the bylaws and used those documents to obtain the proceeds of Phoenix Pallet's liquidation. Accordingly, the court must deny the summary judgment motion as to the deception claim against Mr. Minne. The Tracys haven't come forward with evidence that would support a deception claim against Ms. Minne.

To prove their fraud claim, the Tracys must demonstrate: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 335 (Ind. 2013) (quoting Lawyers Title Ins. Corp. v. Pokraka, 595 N.E.2d 244, 249 (Ind. 1992)). "[F]raud is not limited only to affirmative representations; the failure to disclose all material facts can also

17

constitute actionable fraud." Id. (quoting Lawson v. Hale, 902 N.E.2d 267, 275 (Ind. Ct. App. 2009)).

The Minnes argue there was no fraud and point to evidence that Phoenix Pallet didn't have two sets of books, but, as previously discussed, the Tracys produced evidence creating a genuine issue of material fact regarding whether Mr. Minne allowed Phoenix Pallet to maintain a false set of financial records. The Tracys claim that they relied on the financial records they received from Mr. Minne when they decided to invest another $25,000 in 2014 to make a payment on a 1st Source Bank loan. Accordingly, while the Tracys haven't come forward with evidence that would support a fraud claim against Ms. Minne, the motion must be denied as to the fraud claim against Mr. Minne.

To prove their constructive fraud claim, the Tracys must demonstrate: "(1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party." Harmon v. Fisher, 56 N.E.3d 95, 99 (Ind. Ct. App. 2016) (quoting American Heritage Banco, Inc. v. Cranston, 928 N.E.2d 239, 246 (Ind.Ct.App.2010)).

As fiduciaries, the Minnes had a duty to "deal fairly, honestly, and openly with [the] corporation and fellow stockholders." G & N Aircraft, Inc. v. Boehm, 743 N.E.2d 227, 240 (Ind. 2001). A reasonable trier of fact could find that the

Minnes breached their fiduciary duties. First, the Minnes didn't disclose the promissory note and security agreement to the board and didn't disclose that the instruments weren't executed in accordance with the bylaws. With regard to Mr. Minne, there is a factual dispute the court can't resolve on summary judgment as to whether he allowed Phoenix Pallet to maintain a false set of financial records. A reasonable trier of fact could find that these actions were advantageous to the Minnes while harming the Tracys, who invested another $25,000 in Phoenix Pallet after these instruments were executed.

IV. CONCLUSION

For the foregoing reasons:

1. The Tracys' partial summary judgment motion on the Minnes' fraud (Count 1), constructive fraud (Count 2) counterclaims [Doc. No. 40] is DENIED.

2. The Minnes' summary judgment motion [Doc. No. 42] is:

   a. GRANTED as to:

      i. the conversion claims against Mr. and Ms. Minne (Count 2);

      ii. the criminal conversion claims against Mr. and Ms. Minne (Count 3);

      iii. the deception claim against Ms. Minne (Count 4);

      iv. and the fraud claim against Ms. Minne (Count 5);

  v. the breach of contract claims against Mr. and Ms. Minne (Count 7); and

 b. DENIED as to:

  i. the breach of fiduciary duties claims against Mr. and Ms. Minne (Count 1);

  ii. the deception claim against Mr. Minne (Count 4);

  iii. the fraud claim against Mr. Minne and the constructive fraud claims against Mr. and Ms. Minne (Count 5); and

  iv. the willful, reckless and gross negligence in the management, administration and supervision claim against Mr. Minne (Count 6).

SO ORDERED.

ENTERED:   February 13, 2018

        /s/ Robert L. Miller, Jr.
        Judge
        United States District Court